IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-174-D

KATHY R. ALLEN, and JAY K. ALLEN, )
)
Plaintiffs, )
)
v. ) **ORDER**
)
METLIFE, et al., )
)
Defendants. )

On March 16, 2021, Kathy R. Allen ("Kathy") and Jay K. Allen ("Jay") (collectively the "Allens" or "plaintiffs") filed this action pro se in Wake County Superior Court against Metropolitan Life Insurance Company ("MetLife"), ITT Industries ("ITT"), Harris EXELIS,[1] Mercer Health Benefits Administration, LLC ("Mercer"), and Lincoln Heritage Life Insurance, Co. [D.E. 1-1]. On March 26, 2021, plaintiffs served the summons and complaint on counsel for the defendants. On April 15, 2021, L3Harris, with the consent of the other defendants, removed the case to this court based on federal question jurisdiction [D.E. 1]. The Allens allege claims concerning their mother's life insurance policy arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, et seq., federal common law, and state law. On April 22, 2021, L3Harris moved to dismiss the Allens' complaint and filed a memorandum in support [D.E. 8–9]. On July 12, 2021, the Allens responded in opposition [D.E. 31]. On July 19, 2021,

---

[1] In June 2019, Harris Corporation merged with L3 Technologies, Inc. See [D.E. 1] 1 n.1. As part of the merger, Harris Corporation changed its name to L3Harris Technologies, Inc. ("L3Harris"). Id. In 2015, Harris Corporation acquired Exelis, Inc. Id. Exelis was part of ITT Exelis, a spin-off of ITT Corporation, which plaintiffs identify in the complaint as "ITT Industries." Id. As a result, L3Harris is appearing in this action on behalf of the defendants identified in the Complaint as "ITT Industries" and "Harris EXELIS." Id.

L3Harris replied [D.E. 34]. As explained below, the court grants L3Harris's motion to dismiss.

I.

Plaintiffs are the adult children of Rebecca Johnson ("Johnson"). See Compl. [D.E. 1-1] 2, ¶¶ 4–5. Johnson worked for ITT or one of its affiliates until her retirement in 1987. See id. ¶ 7; [D.E. 9] 3. ITT sponsored a life insurance benefits plan for active employees and certain retirees, the ITT Salaried Retiree Life Insurance Plan (the "Plan"). When Johnson retired, she was eligible to participate in the Plan. See Compl. at 2, ¶ 7; [D.E. 9] 3. As of January 1, 2010, the Plan's life insurance benefits were insured by a MetLife group policy. See Plan [D.E. 9-1] at 2, 5. In October 2011, Exelis, Inc. ("Exelis"), a part of ITT, became the Plan's sponsor and administrator. See id. at 75. In May 2015, Harris Corporation acquired Exelis, and Harris assumed responsibility for the Plan. See id. at 74. In June 2019, Harris Corporation merged with another company and became L3Harris. See supra n.2.

On November 9, 2015, Exelis, then a part of Harris Corporation, amended the Plan. See Plan at 18–21. A January 1, 2016 Summary of Material Modifications ("SMM") memorialized and explained the amendment. See id. at 74–77. Among other changes, the amendments added a forum-selection provision, a contractual limitations period, and a termination date to the Plan. See id. As for the termination date, the amendments specified the Plan would terminate on January 1, 2016. See id. Specifically, the termination provision stated:

> [E]ffective as of January 1, 2016, the Plans hereby are terminated, such that no benefit (whether a basic life, supplemental life, optional life, dependent life or survivor income benefit or otherwise) shall be payable under the Plans upon the death of a retiree or disabled former employee (whether a retiree or disabled former employee as of the date hereof or an active employee as of the date hereof who subsequently terminates employment from the Corporation and its subsidiaries) occurring after December 31, 2015; provided, however, that for the avoidance of doubt, this provision in no event shall be interpreted to limit any conversion rights which may inure to a retiree or disabled former employee under any insurance policy

2

maintained in connection with a Plan . . . .

See id. at 20 (emphasis omitted).

The Allens allege that Johnson received letters dated in June 2015 and November 10 and 27, 2015 regarding her employer-provided life insurance policy. Compl. ¶ 14. In the November 10, 2015 letter, L3Harris notified Johnson of the upcoming termination of her retiree life insurance under the Plan. See [D.E. 9-2]. L3Harris advised Johnson that her retiree life insurance would be discontinued after December 31, 2015, and that Johnson would no longer be eligible for company-sponsored retiree life insurance. See id. The letter explained that Johnson could convert her group life insurance to an individual personal policy from MetLife, who would provide additional information regarding Johnson's conversion options. See id. The letter told Johnson that any election to convert was due by January 31, 2016. See id. MetLife's November 27, 2015 letter similarly informed Johnson of her eligibility to convert her employer-provided group life insurance coverage to an individual MetLife policy. See [D.E. 9-3]. The letter specified a 45-day deadline for conversion—from the December 31, 2015 termination date until February 14, 2016—and provided instructions and a conversion application. See id.

On December 31, 2015, the Plan terminated. See Plan at 20. In March 2016, Johnson died. See Compl. ¶ 26. The Allens claim they asked MetLife about a policy several times from June 2017 and into 2018. See id. ¶ 28. The Allens also allege Jay submitted a claim form to MetLife around February 2018. See id. ¶ 50. On March 22, 2018, MetLife responded that Johnson's coverage had ended at the time of her death, no payment would be made, Jay could file an appeal within 60 days, and Jay could contact L3Harris for more information about the policy. See id. The Allens do not allege that they appealed MetLife's determination.

The Allens also allege that on February 21, 2018, Kathy sent a letter to Mercer, a benefits

3

administrator, about the policy. See id. ¶ 34. On June 11, 2018, Mercer responded that it had received the letter but did not have a policy for Johnson and asked Kathy to send more information. See id. ¶ 37. The Allens also allege that in response to their correspondence and supplemental information to Mercer, "Mercer/Harris" again told the Allens they did not have any policies for Johnson. See id. ¶¶ 45–46.

On November 19, 2019, the Allens sued defendants, seeking benefits under Johnson's life insurance policy and seeking damages. See Compl. at 2. On March 17, 2021, the Allens voluntarily dismissed those claims after defendants removed the case to this court from North Carolina Superior Court. See [D.E. 9] 1–2. On March 16, 2021, the Allens filed this suit in North Carolina Superior Court and defendants timely removed to this court. See Compl. at 1; [D.E. 1]. The Allens thereafter dismissed MetLife, Mercer, and Lincoln as defendants. See [D.E. 17, 39, 43, 44, 49, 50]. L3Harris, the last remaining defendant, moves to dismiss the Allens' claims. See [D.E. 14]. The Allens oppose the motion. See [D.E. 31].

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708

4

F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166.

In support of its motion to dismiss, L3Harris argues that ERISA preempts the Allens' state law claims. See [D.E. 9] 12–13. L3Harris also argues the Allens' ERISA claims fail because the Allens are not beneficiaries under ERISA and lack standing to sue, the Plan was validly terminated, the Allens failed to exhaust the administrative remedies as the Plan required, and the claims are time barred. See id. at 16–22.

A.

The Allens allege several state tort and contract law claims. See Compl. at 6. Defendants respond that ERISA preempts the Allens' state law claims. See [D.E. 9] 12–14. Initially, the court considers whether the Plan was an employee welfare benefit plan under ERISA. ERISA governs all employee benefit plans established or maintained by any employer engaged in interstate commerce. See 29 U.S.C. § 1003(a)(1). An employee benefit plan includes an employee welfare benefit plan.

5

See id. § 1002(3). An employee welfare benefit plan is a plan, fund, or program that provides, among other things, death benefits to participants and beneficiaries through the purchase of insurance or otherwise. See id. § 1002(1). The Allens admit that the Plan was an employee welfare benefit plan under ERISA. See Compl. at 2, ¶¶ 31, 33–43, 48–50; [D.E. 31] ¶¶ 7–8.

ERISA contains an express preemption provision, which states, "the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA's preemption provision is "deliberately expansive, and designed to establish [benefit] plan regulation as exclusively a federal concern." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45–46 (1987) (quotation omitted). ERISA also contains a savings clause which excepts from preemption state laws that "regulate[] insurance." 29 U.S.C. § 1144(b)(2)(A). However, state common law and tort law claims do not regulate insurance just because the specific claims involve insurance coverage. See Pilot Life, 481 U.S. at 47–48 (state law claims for breach of contract, tort, and bad faith arising out of a denial of ERISA plan benefits relate to an ERISA plan and are preempted by ERISA). After all, Congress intended ERISA's civil enforcement scheme to "be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress." Id. at 52.

"[I]n light of the objectives of ERISA and its preemption clause, Congress intended ERISA to preempt at least three categories of state laws that can be said to have a connection with an ERISA plan." Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1468 (4th Cir.1996). These three categories are: (1) "state laws that mandate employee benefit structures or their administration"; (2) "state laws

6

that bind employers or plan administrators to particular choices or preclude uniform administrative practice"; and (3) state laws that "provid[e] alternate enforcement mechanisms for employees to obtain ERISA plan benefits." Id. (quotations and alteration omitted); see Pilot Life, 481 U.S. at 48; Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d 326, 342 (4th Cir. 2007). A state-law claim is an alternate enforcement mechanism for obtaining ERISA plan benefits, enforcing fiduciary duties, or forcing disclosure of information when it rests on the same allegations that support an ERISA claim and an employee brings it against a defendant owing a plan-created fiduciary duty to the employee. See Wilmington Shipping Co., 496 F.3d at 341–44; Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 191–92 (4th Cir. 2002); Elmore v. Cone Mills Corp., 23 F.3d 855, 863 (4th Cir. 1994) (en banc). When the claim "is premised on the existence of an employee benefit plan so that in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists, ERISA preemption will apply." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 378 (4th Cir. 2001) (citation and quotations omitted); see Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 139–40 (1990); Pilot Life, 481 U.S. at 52–55.

The Allens allege state law claims including breach of contract, negligence, breach of duty of care, breach of fiduciary duty, fraud, tortious interference with an inheritance, wrongful death, bad faith, and unfair and deceptive trade practices. See Compl. These claims relate to the Allens' efforts to obtain life insurance benefits under the Plan following Johnson's death. Thus, ERISA preempts the Allens' state law claims, and the court dismisses those claims. See, e.g., Pilot Life, 481 U.S. at 44–48; Griggs, 237 F.3d at 378; Elmore, 23 F.3d at 863.[2]

---

[2] The Allens also mention "NC 58" in their complaint. Chapter 58 of the North Carolina General Statutes regulates insurance. See N.C. Gen Stat. § 58; see, e.g., Compl. ¶¶ 20, 43, 48, 53. However, the Allens do not specify any particular provision of Chapter 58 that would entitle them

7

As for the Allens' breach of fiduciary duty claims, ERISA provides relief for breaches of fiduciary duties arising from violations of ERISA or the terms of an ERISA plan. See 29 U.S.C. § 1132(a)(3); Griggs, 237 F.3d at 384. Accordingly, the court analyzes these claims under ERISA.

B.

The Allens' remaining claims under ERISA relate to the termination of the Plan, the resulting lack of a benefit payout under the Plan, and communication between defendants, Johnson, and the Allens about the Plan. The Allens have not alleged that Johnson converted her policy to an individual personal policy. Therefore, the Allens' claims depend on the existence of a policy covering Johnson at the time of her death or that the Plan's termination violated ERISA.

"ERISA does not create any substantive entitlement to employer-provided . . . welfare benefits." Curtiss–Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). And "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. . . . When employers undertake those actions, they do not act as fiduciaries." Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (citations omitted); see Schoonejongen, 514 U.S. at 78. ERISA requires employers to manage welfare benefits plans as fiduciaries but allows employers to make business decisions about providing those plans. See Sejman v. Warner-Lambert Co., 889 F.2d 1346, 1348–49 (4th Cir.1989); In re White Farm Equip. Co., 788 F.2d 1186, 1193 (6th Cir. 1986). Thus, ERISA treats benefits under a welfare benefits plan differently than vested pension benefits. See Sejman, 889 F.2d at 1348; In re White Farm Equip. Co., 788 F.2d at 1193.

---

to relief or state any such claim with enough particularity. Thus, any such claim fails.

8

The Allens allege L3Harris violated its fiduciary duties by failing to continue the Plan and claim they are entitled to benefits under the Plan. L3Harris, however, validly terminated the Plan and was not acting as a fiduciary when it did so. See Lockheed Corp., 517 U.S. at 890. The Plan expressly provided authority to modify or terminate the Plan at any time. See Plan at 15. The Plan stated: "The Company expects to continue the ITT Salaried Retiree Life Insurance Plan" but cautioned that "it reserves the right to amend, modify, suspend or terminate the Plan, in whole or in part. Plan amendment, modification, suspension or termination may be made for any reason and at any time." Id. The Plan also stated that "while ITT expects to continue the Plan, it reserves the right to change or discontinue the Plan at any time with respect to some or all participants." Id. at 17.

After Exelis became a part of L3Harris in May 2015, Exelis amended the Plan. See Plan at 18–21. One of those amendments added a January 1, 2016 termination date. See id. ("[E]ffective as of January 1, 2016, the Plans hereby are terminated . . . ."). The SMM summarized the amendments and explained that "the Retiree Life Plans were terminated, effective as of January 1, 2016." Id. at 77. L3Harris notified Johnson about the changes to the Plan. L3Harris and MetLife sent letters to Johnson explaining that her retiree life insurance under the Plan would terminate and that she had a right to purchase coverage from MetLife under an individual policy. See [D.E. 9-2, 9-3]; Compl. ¶¶ 14–17, 19–22, 25, 39–40, 48.

L3Harris could amend and terminate the Plan and was not acting as a fiduciary when it did so. See, e.g., Lockheed Corp., 517 U.S. at 890. The Allens do not allege whether Johnson opted to purchase the individual conversion policy from MetLife, but her right to life insurance under the Plan ceased on January 1, 2016. Effective January 1, 2016, "no benefit (whether a basic life, supplemental life, optional life, dependent life or survivor income benefit or otherwise)[was] payable under the Plans upon the death of a retiree . . . occurring after December 31, 2015." Plan at 20.

9

When Johnson died in March 2016, Johnson no longer had coverage under the Plan. Therefore, the Allens fails to state a claim for benefits under the Plan or the Plan's termination. See, e.g., Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 640 (4th Cir. 2007), abrogated on other grounds by Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008); Hughes v. 3M Retiree Med. Plan, 281 F.3d 786, 790–93 (8th Cir. 2002); Gable v. Sweetheart Cup Co., 35 F.3d 851, 855–59 (4th Cir. 1994).

Alternatively, the Allens' claims are untimely. ERISA requires a plaintiff to file a breach of fiduciary duty claim within "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. §1113(2). ERISA does not contain a statute of limitations that applies to section 1132(a)(1)(B) benefits actions, but the Plan contains a contract term that imposes a deadline on filing legal actions. See Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 105–08 (2013). "The principal that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan." Id. at 108. The Plan's contractual limitation provision provides that "no legal or equitable action (including a legal or equitable action under section 502 of ERISA) involving this plan may be commenced later than two years after the date the person bringing an action knew, had or was provided notice, or otherwise had reason to know, of the circumstances giving rise to the action (or if later, November 1, 2017)." Plan at 19.[3]

The Allens admit that by November 1, 2017, they were told that there was no policy covering their mother. See Compl. ¶ 40. The Allens originally sued defendants on November 19, 2019 in

---

[3] The Plan also provides for a limitations period after the end of an internal review appeal process. See Plan at 19. The Allens do not allege that they pursued an internal review appeal after they were informed that their mother was not covered by a policy and there would be no payout under the Plan.

10

North Carolina Superior Court. See Compl., Allen v. MetLife, No. 5:19-CV-572-H (E.D.N.C. Dec. 19, 2019), [D.E. 1-1]. Defendants removed the case to this court. On March 17, 2020, the Allens voluntarily dismissed their complaint under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). See Stipulation of Dismissal, Allen v. MetLife, No. 5:19-CV-572-H (E.D.N.C. Mar. 17, 2020), [D.E. 36]. The Allens then refiled their suit in North Carolina Superior Court on March 16, 2021, just shy of one year after they dismissed their suit in this court. See [D.E. 1-1].

As for the Allens' claims for benefits under section 1132(a)(1)(B), the Plan's contractual limitations period of two years applies. See Plan at 19. Any claim the Allens had for benefits under the Plan arose when Johnson died in March 2016. See Blackshear, 509 F.3d at 641. Accordingly, the two-year contractual limitations period expired in March 2018. The Allens filed their original complaint on November 19, 2019, and their second complaint on March 16, 2021. Under either date, the Allens' claims for breach of fiduciary duties and for benefits are untimely.

As for the breach of fiduciary duty claims, ERISA required Johnson or the plan beneficiaries to file suit no later than three years after the earliest date that they had actual knowledge of the breach or violation. See 29 U.S.C. § 1113(2); Intel Corp. Inv. Comm. v. Sulyma, 140 S. Ct. 768, 776–77 (2020) (holding "the plaintiff must in fact have become aware" of the breach or violation). On November 10, 2015, L3Harris notified Johnson about the termination of retiree life insurance coverage under the Plan. See [D.E. 9-2]. Johnson had notice of claims related to the termination of the policy at that time. However, it is unclear when the Allens, plaintiffs in this action, knew about the Plan termination. Taking the allegations in complaint and all reasonable inferences drawn therefrom as true, the Allens discovered the alleged breach or violation in June 2017. See Comp. ¶¶ 6, 12, 28. Thus, the limitations period for the Allens' breach of fiduciary claims expired in June 2020.

11

The Allens filed their original suit on November 19, 2019, within the relevant limitations period. However, they did not file this action until March 16, 2021, after the limitations period for the breach of fiduciary claims expired. That the Allens' refiled their complaint in North Carolina Superior Court does not change this conclusion. North Carolina Rule of Civil Procedure 41 includes a one-year savings provision applicable to voluntary dismissals without prejudice, and the Allens filed this suit on March 16, 2021, which is within one year of their earlier voluntary dismissal. However, "a voluntary dismissal under the Federal Rules in a nondiversity case in federal court does not . . . invoke a savings provision." Bockweg v. Anderson, 328 N.C. 436, 439, 402 S.E.2d 627, 629 (1991). Accordingly, because defendants removed the Allens' original suit to federal court under the court's federal question jurisdiction, and the Allens' filed their voluntary dismissal under Federal Rule of Civil Procedure 41, the North Carolina Rules' savings provision did not apply. This result comports with the general principle in federal court that "a dismissal without prejudice operates to leave the parties as if no action had been brought at all." In re Matthews, 395 F.3d 477, 480 (4th Cir. 2005) (quotation omitted). Accordingly, the Allens' breach of fiduciary claims are untimely.

The Allens also allege various ERISA violations under section 501(a)(1)(B) related to failure to provide information to them or Johnson regarding the policy. See Compl. at 2, ¶¶ 25–30, 45; 29 U.S.C. § 1132. Under ERISA, plan administrators must maintain certain documents and provide documents and information to beneficiaries within 30 days upon demand. See 29 U.S.C. § 1132(c).

Assuming without deciding that the Allens are beneficiaries, L3Harris and Mercer fulfilled their obligations to provide information. The Allens acknowledge that L3Harris informed Johnson of the policy termination and her eligibility for conversion in November 2015 and that Mercer sent the SMM, memorializing the Plan amendments, in January 2016. See Compl. ¶¶ 9–10, 25–26, 36, 43. The Allens also acknowledge that L3Harris and Mercer responded to their inquiries about their

12

mother's policy by confirming there was not a current policy. See id. ¶¶ 27–28, 36–37. Thus, the Allens do not state a claim under ERISA's information request provisions.

III.

In sum, the court GRANTS L3Harris's motion to dismiss [D.E. 9], DISMISSES WITH PREJUDICE plaintiffs' complaint [D.E. 1-1], and DENIES as moot Mercer's motion to dismiss [D.E. 14]. Any proposed amendment would be futile. The clerk shall close the case.

SO ORDERED. This 10 day of January, 2022.

JAMES C. DEVER III
United States District Judge